Mr. Atkinson, when you're ready. Thank you, Your Honor, and please, the Court. The litigation below started out as a garden variety anti-dumping lawsuit. The Department of Commerce had concluded its second administrative review of the anti-dumping duty order on ironing boards from China. Our client, HOME PRODUCTS, was dissatisfied with those results and brought an action in the Court challenging narrow aspects of the Department's decision. While that action was pending, new evidence surfaced which indicated that the foreign producer, SINCE HARDWARE, had submitted false material information to the Department during the review. The false information included falsified official documents. Did they actually make a finding that they were falsified or just that they were unreliable? They did not use the term falsified. The Department didn't say falsified. They did find that the documents were unreliable. However, when you look at all of the evidentiary facts... Did they give a basis for which they believed the documents were unreliable? Was there any discussion of why? Oh, absolutely. There was a very lengthy... There were two lengthy memorandums that the Department issued, an issues and decision memo and an adverse facts available memo. So what led to their conclusion of unreliability? The word Commonwealth was spelled wrong and these didn't look like earnest documents from the source that they were supposedly from? The signature on the certifications did not match the official signature on file at the certifying agency and in one instance the signature had a date with it that preceded the date of employment of the putative signatory. So those were among several of the more troubling aspects of what was submitted. And those were actually cited by the government as reasons they were concluding the documents were unreliable and therefore going to rely on adverse facts? Correct. That's correct. So your argument is you can call it unreliable but it's really falsified otherwise... You pointed out all of the falsifications which are what led you to the conclusion. Correct. We believe the documents were falsified and we don't think that can be seriously disputed. This is certainly in the third review, but the documents in the second review, which is the review before your honors, were virtually the same. Let me tell you what gives me some pause here. Did you raise to Commerce the contention you're now raising here and you raised in the CIT that Commerce ought to take into account in the second administrative review through a reconsideration of their order the problem with the documents? Well, we did not. This evidence arose after the conclusion of the second administrative review. Right. But the question would be why didn't you go back to Commerce and say we've discovered this evidence, you should reconsider what you've done? Well, we were in court. Well, yeah, but why couldn't you? I mean, here's my problem. You say in your brief, well, we have this information coming to us now in the form of a brief as to what Commerce's position is, but that's a litigating position. We don't know what Commerce's real position is. But you didn't ask Commerce for their real position or for an explanation as to the reason that they've taken no action. You didn't ask for them to take action. I wonder whether you've exhausted your administrative remedies. Was there anything that would have, any regulation or practice on the part of Commerce that would have prohibited you from asking for reconsideration even while the action was pending before the court? Well, I think not, Your Honor, but there was no, we were in court and it did not occur to us to ignore the fact that we were in court and go back to the agency. We did bring this to the attention of the court. We asked the court to go beyond the administrative record and to consider new evidence. What you're asking is for us to say that the agency acted improperly in not adjusting the order, or at least that there's something wrong with the order that should be corrected at this point and the agency hasn't had a chance to fix it. We're not criticizing the agency for not having adjusted the order. We are criticizing the court below for not remanding it to the agency to consider the new information. I guess related to Judge Bryson's point, is it your position then that the agency would not have had the ability to, you know, when we get cases from a district court, a district court judge can't fix them no matter how much they'd like to once the case is in our court. Is it your thinking that the presence of the case in the CIT took the ability away from commerce to reopen the Second Administrative Review, or . . . We think the Commerce Department could have reopened it with permission from the court. That's the way we proceeded. We wanted the court to issue instruction to the Department of Commerce. And they need permission from the court though? We thought they did. What you could cite in support of that is that every time that commerce has wanted to respond on its own, it's asked the court for permission to have the case remanded. Right? That's true too. Of course, the practice, or at least the majority practice, in district court litigation is that if you have a motion to set aside a judgment or motion for a new trial based on newly discovered evidence or whatnot, while the case is pending in the Court of Appeals, you go to the district court and you make the motion in the district court. The district court says either no, I'm not going to grant you relief, in which case you're done, or yes, I would grant you relief, but I can't because the case is in the Court of Appeals. And then you go to the Court of Appeals and say the district court has indicated a willingness to grant the motion. Would you remand if the court remands? But the court here, the CIT, it seems to me is in a somewhat disadvantaged position because if you're right that the court has an obligation to send this back based on your allegations of improper information, it has to enter an order reversing the Commerce Department without having the Commerce Department already having said what its position is on that. And that seems to me to be getting it backwards. I don't think you're asking the court to reverse the Commerce Department. Before the court decided the issues before it, we were asking the court to remand to the Commerce Department to take into account newly discovered evidence. Just for clarification, what is it you would like us to do? I ask because if you are correct that the lower court should have considered information outside the record in making its fraud assessment, one option for you would be to ask us to vacate so they could do that if we agree that's erroneous. But the writing kind of seems to be on the wall vis-à-vis that opinion. I would imagine I'd see you back here again if I ordered that. So what is it you're asking us to do? Is that what you're requesting or is it something different? We are asking Your Honors to reverse the lower court and to issue an instruction to the lower to the Commerce Department so that the Commerce Department can reconsider its second review final results in light of the new evidence that was But do we have to make a determination of fraud in order to do that? Absolutely not. I think that if there is evidence that gives rise to serious concern, I think that it is appropriate for the matter to be remanded to the Commerce Department. But there are two possibilities. One is to remand to the Commerce Department to see if it believes it's appropriate to reopen. The other one is to remand to the Commerce Department to compel it to reopen. Which of those are you seeking? We are seeking the second in the interest of judicial economy. I think if we have it remanded to the Commerce Department I have trouble with that second one because under Rule 60B, for example, in the federal rules that even a fraud allegation has to be brought within one year of the judgment. The motion here was made more than one year after the Commerce Department judgment in the second review. Isn't it possible that Commerce, in considering this, could say, well, this wasn't brought in a timely way. We think it's on a reasonably long period of time. The evidence of fraud was discovered by us in the summer of 2008. But there's an absolute limit in Rule 60B, right? We were really not invoking Rule 60B. But I'm saying it's sort of a parallel situation. There must be circumstances in which Commerce can say the newly discovered evidence or evidence of fraud comes too late. We're not going to reopen. Well, certainly in the Tokyo Kikai case, the evidence of the fraud occurred years after the finding by the Department was made. So there was nothing shutting the door on reconsideration in that case, not because of time. In our case, we move with great dispatch. This is the first case in which, if I understand correctly, that one of the parties, as opposed to a sui spondi request, has been made. One of the parties has said, please compel them to reopen. There's got to be some limits on the obligation to reopen, right? No? Five years later? We asked for relief from the court within weeks of learning that there was a problem. So I don't see how we were sitting on our rights, Your Honor. Yeah, but that doesn't make any difference under Rule 60B. There's an absolute time limit. Well, fair enough, except that we really are not invoking Rule 60B. We think the court below— Something similar, isn't it? Perhaps similar, but the court below had the authority. The court below had before it the second review results. It had to make a decision on the second review. And we now had new information regarding that second review, which we thought was appropriate for the court to consider and for the court to at least ask the Commerce Department to think about. So, you know, in our brief we cited other cases where other courts of appeal, Ninth Circuit, Second Circuit, has determined that it was appropriate to have the district court take action upon the basis of allegations of perjure testimony that contaminated the administrative record. If you would win this case, and I think we all have to agree that this is sort of, for lack of a better term, sort of a flashy case with respect to the facts. I mean, you don't have a flashy case. I mean, the facts have a certain—they're striking, let's say. But if you would win this case, of course, we would then have to deal with the problem of lots of other cases in which people would be coming in saying, well, you know, the trial court should go ahead and send this back to Commerce just to see what they think. What standard would you ask us to devise for filtering out all but the most clear-cut cases? Or do you think only the most clear-cut cases should be subject to the trial court without automatically sending them back to Commerce for another look? I would say, Your Honor, if there's evidence that indicates fraudulent activity, fraudulent conduct, perjure testimony, forged documents, that would be—whatever the standard is, that should be on the right side of that. Well, when you say indicates, do you mean that— suppose the CIT were to look at the documents and say, you know, I don't find that I'm in a position, based on looking at the documents, to make a finding of fraud. Therefore, I'm not going to send it back. Would that be the right standard? You know, we're not talking about fraud in any technical way. No, I understand. I understand. Fraudulent misrepresentations which were submitted to Commerce by someone. I'm having trouble answering this question, Your Honor, because I look at what the Second Circuit did in the Alberta Gas Chemicals case. Someone alleged that there was perjured testimony that affected the ITC's decision. There wasn't a fact finder's finding that there had been perjury. But one of the parties said that we have evidence of perjury. And the Second Circuit ordered the district court to remand to the ITC to determine whether testimony before it was perjured and perjurious. And if so, but for that perjured testimony, would your determination have been different? That's what the court did there. But do you think that that would be an appropriate standard to apply to the CIT when addressing claims by parties that there's something false in the evidence that was before Commerce? I think there would have to be some evaluation of the claims being made. And I don't, I've not thought through what the precise standard is. Substantial evidence of a material misrepresentation. That sounds consistent with our great traditions. Anyhow, I see my light is on, Your Honor. If you have no further questions, I'd be pleased to circulate. Thank you. Ms. McCarthy. Good afternoon. May I please report? The trial court did not abuse its discretion in denying the motion for remand. So Commerce has complete discretion no matter how bad the evidence is to decide we don't want to ask for a remand? Well, just in terms of the, yes. It has, this court held at TKS that Commerce has inherent authority to reopen its proceedings to cleanse the taint of fraud. It never abuses its discretion in refusing to reopen? Yes, it's the matter of prosecutorial, it's akin to prosecutorial discretion. There's no standard. It's absolute. It's absolute. And I can explain why, oh, I can explain why. Suppose that Commerce had just adopted a practice of saying that, well, if there's misrepresentation by domestic parties, we'll ignore it. If there's misrepresentation by importers, we'll take it seriously. Would that be an abuse of discretion? To be clear. Actionable abuse of discretion. If Commerce invokes its inherent authority and abuses its discretion in doing that, that is reviewable. No, in the particular instance, it doesn't invoke its authority because it has a policy of not granting relief to importers when they bring exactly the same kinds of claims that the domestics would get relief on. The interested parties really have no standing to challenge the inherent authority. It's not within the statute. The relief that Home Products is seeking is flatly in contradiction of the plain language of 19 U.S.C. 1516a.b.2, which only authorizes the judiciary to review the record that was placed before Congress during the administrative proceeding. Home Products is way out of time on this. It failed to raise, it failed to present to them its information in question on the record of the second administrative review. It failed to challenge or urge Commerce to apply adverse facts available in its case brief, which was required. The Ninth Circuit has held that the court should look and be willing to look outside the record when there are allegations of fraud. Clearly, they've made allegations of fraud here. Now, of course, we're not bound by the Ninth Circuit, but it's an awfully compelling opinion because, as it explains, the evidence of the fraud itself is almost never within the administrative record. So it would almost prevent us from ever getting to look to see whether there's fraud if we don't look outside the record. So if that's an error as a matter of law by the CIT, wouldn't we have to vacate and send it back? Well, Your Honor, this is a very complex statutory scheme, and Congress has authority to do many things. It has no authority to investigate fraud. It has no authority to assess penalties. It has authority to reconsider its orders, right? It does. It has inherent authority. Inherent authority, and presumably, at least it would be open to Commerce. I assume you would agree that if Commerce decided it's intolerable to allow this order to stand based on the fraudulent procurement of, in effect, of relief or the avoidance of adverse decision, and we're going to grant reconsideration. We're going to throw out that we think fraudulent evidence, and we're going to change our order. That would be perfectly within their authority, right? Commerce, under TKS, Commerce has inherent authority to take actions to cleanse proceedings. But Commerce does not look into the intent. But it can never abuse that discretion? There's no such thing as an abuse of that discretion? We don't know, but we're not aware of any authority or any case that would say that that would be. Well, I mean, generally, the review is arbitrary and capricious. Suppose we'd say, well, it's arbitrary not to exercise that discretion to pull it back. But there's no party. Mahone Products doesn't have standing or the foreign producers don't have standing to decide how Commerce is supposed to cleanse its own proceedings of the taint of fraud. It's inherent authority. There's absolutely no right under the statute. What is the support for the notion that we can't review that decision to ask for a remand for arbitrary and capricious behavior? The decision for Commerce? Commerce's decision not to ask? The trial court's decision to deny the motion. No, but inherent in that is the trial court is approving your exercise of discretion not to ask for a remand. Why can't we say we're reviewing that exercise of discretion that's arbitrary and capricious under the circumstances of this case not to ask for a remand? There just isn't any other. It's the absence of authority. There's nothing that requires Commerce. Commerce is not a fraud investigation agency. There are many things that can be done with this information. But you, on a number of occasions, have asked for a remand under similar circumstances. You can do it. You have the authority to do it. You agree that you have the authority to do it. If you have the authority to do it, can't the authority be abused under some circumstances by refusing to exercise it? Commerce has asked for authority. I'm not aware of any situation other than TKS in which Commerce has invoked its inherent authority to reopen closed proceedings. And let's be clear here. Home products fail to timely place this information on the record. And Commerce cannot reopen any time it determines in a subsequent review that a respondent has failed to cooperate. It's not required to go back and reopen earlier closed proceedings to make sure that they really did cooperate. Just out of curiosity, why isn't there a little bit of righteous indignation? I was surprised by Commerce's position in this case. You determined that the documents were fraudulent, and they were awful documents. Well, you determined they were unreliable. But really, you determined they were fraudulent because you applied adverse facts, and your unreliability is just your chosen adjective, but it's for the finding that you can't trust the documents because on their face they're blatantly forged and improper. I mean, that's a determination of fraud as best as I can see. So given that you determined they were fraudulent, and then the exact same documents appeared in the earlier one, why doesn't my government get a little unhappy about that and want to exercise its discretion or authority? Because, again, Commerce does not investigate fraud. If there's allegations of fraud... It has the authority to do it. Commerce has made a determination in the third review that funny business has gone on with regard to these documents. Why wouldn't it want to look at the second one and reopen it under those circumstances? Well, Your Honor, I have to – there are many – unfortunately, this type of behavior is not uncommon. It's just inertia? No, it happens in Gerber. It's not said in the briefs, but there's a case called Gerber Fresh in which the Court of International Trade, there was undisputed fraud going on by the respondent in that case. Commerce applied adverse facts available, and the Court of International Trade questioned the nexus between the fraudulent behavior and the application of adverse facts available. Commerce goes on verification, and people are throwing documents out the window. So Commerce doesn't want to do it because they're afraid they'll be told they're wrong when they do? No, because they don't have the administrative resources to reopen closed proceedings every time that there's unreliable information. Unfortunately, there are probably – there's unreliable information on probably every one of its records, and it can't reopen closed proceedings just because there's unreliable information on the record. But it does reopen closed proceedings once in a great while, I take it? Once in a great while. I can tell you in TKS, as Judge Gordon correctly noted before, that was an extraordinary situation in which it was a – first of all, there was a body that was charged with determining intent, which Commerce does not do. It does not determine intent of fraud. There was a jury finding under the Repealed Anti-Dumping Act, and in that case, the order had been revoked as a result of the fraud. This order involving since hardware is not going to be revoked because the two de minimis reviews have – the big harm that was available that was present in TKS is not present here. Let me ask you a question. No, go ahead. A question about the whole issue that I began with Mr. Eikenson about, of whether he should have presented this to Commerce in the first instance. Now, you don't make – as I read your brief, you don't make an argument in your brief that they – that that was a failure to exhaust administrative remedies. I – Go ahead. I'm sorry. I agree with Mr. Eikenson that he did not have authority to go to Commerce. It was a litigation. It was before the court. He could not go directly to the agency. Is there a regulation that says he couldn't go to Commerce? The whole case is before the court. Well, so why isn't it like a motion for a new trial when the case is pending on appeal, which in most instances is one that you go to the district court, you say, here's my newly discovered evidence, and the district court says, wow, let me write an order that says the Court of Appeals remand this case to me and I'll grant the relief. Well, the Court of International Trade assumes jurisdiction over the final determination or final results in this case being issued by Commerce, and so the court has jurisdiction over that determination, and so any activity that occurs with that determination is within the jurisdiction of the court. I agree with him that he – So Commerce wouldn't be willing to give prophetic ideas of how they might resolve the evidence if it was – Our position is that Commerce wouldn't have authority to do that because it was in the court. We'd be – we'd almost be in contempt – well, not contempt, but the court has jurisdiction over it. It's outside of your authority. It wouldn't have authority to opine on it. I will say that in terms of Your Honor's reference to exhaustion of administrative remedies, that's the point in which they – since Home Products should have raised this information at the time of the second administrative review. But they didn't seem to have the information at that point. Well, that's – I mean, that's the nature of newly discovered evidence. Well – Presumably. It sounds as if they produced it as soon as they had – Sounds as if they produced it as soon as they had access to the information. I mean, or at least let's assume that they did. You don't have any information to the contrary. It has failed to make that showing on the record that it couldn't have unearthed this information sooner. It certainly has made no showing of that nature. Well, so – Fraud is usually – I mean, it's been a long time since I've been – Let's assume that they disclosed it to the Court as soon as they A, got it, or B, could reasonably have been expected to get it. Still, you say just that's too bad. You get – you're not entitled to any form of relief. It certainly – if there's evidence of fraud, which can be criminal, it can refer to the appropriate authorities. Let me ask you a question. Suppose, under these circumstances, Commerce had cogitated about this and reached the opposite conclusion. It had said to the Court of International Trade, please remand it. This is serious. We're going to look at it. Would Commerce have had authority to do that? If they had gone to the Department of Justice, yes. I mean, yes, we can – So you could have asked for a remand.  But that's because Commerce doesn't – It wouldn't have been unlawful to ask for the remand. No. It would have been within your discretion to ask for the remand. Right. But that would have been based, as this Court recognizes, in TKS. It's not too late. What? Not too late. Your Honor, I'm actually quite serious about this. I don't mean – we don't take fraud lightly. Certainly, we don't take fraud lightly. And certainly, any government official, if they come upon evidence of fraud, is required under regulation to disclose it to the appropriate authorities. The issue is, who is the appropriate authority to decide issues of fraud? It is not this agency of limited resources, which is charged with administering the entire anti-dumping and countervailing duty law. But you kind of already did. You already did. In the third assessment, you applied adverse facts available, right? Because you decided these documents were false. Underline. That is the remedy. The adverse facts available is not – This is a very important point. It's not punitive. In fact, if Commerce assesses adverse facts available in a punitive manner, we can't defend it and we will be overturned by the court. It cannot be punitive. The purpose of – But it can go to sort of the broadest edge of possible reasonable bounds. I mean, 150 percent. That's a big difference. I mean, you can really reach right up to that line. So you may say it's not punitive, but what I consistently see Commerce doing when they apply the broadest reasonable facts is adopting a number that is orders of magnitude higher than the original number. Point well taken, Your Honor. But the point is that it's not intended to be punitive. It should not be punitive. In fact, the anti-dumping and countervailing duty law cannot be punitive. It's a remedy. It's a remedial statute. And adverse facts available provision has one purpose and one purpose only, which is to encourage respondents to cooperate. Well, they'd probably be happy if you used adverse facts available in the second proceeding in the same way you did in the third one. All right. Are we dealing with the same documents here? I don't know that, Your Honor. No. I mean, there's an inference that's being made by Home Products that this is the case. But the edges are closed. Are they the same documents that were considered in the third administrative review? I don't know that. I don't know that. I would have thought they were similar but not the same. They're not the same, I'm sure. But the issue is the purpose of adverse facts available is to encourage cooperation of respondents in a future review. So here for Congress to go back and reopen the record and assume it makes the same decision that it made in the third review, the purpose of assessing an AFA rate is lost because we're already back in time, which is why there are very rigid timelines for when administrative proceedings are to occur. And as I began, the court can only review an administrative record that's compiled during the administrative proceedings, and Home Products is not to explain why it failed to present this information sooner, why it didn't preserve its challenges, it didn't exhaust these remedies. Really, if Congress were forced to reconsider all of its closed proceedings, the already overstressed agency would come to a grinding halt. The Commerce Department has not, at least other than through your brief and argument, stated the reason that it did not decide to reopen this case. Now you say that's perfectly okay that they were not requested to state a reason or decide whether to reopen it given that the case was pending in the CIT. If we decide that our job entails, at least in part, determining whether Commerce has abused its discretion by not taking some form of action in this case, what should we take as the explanation for Commerce's decision not to act, or at least Commerce's decision to oppose a remand in this case? What explanation would have been in a letter that Commerce would have sent back to Mr. Eikenson if Mr. Eikenson had sent a letter saying, please reopen that proceeding? What is the explanation Commerce would have given him for not doing it? That he was too late, that this information should have been presented during the second administrator review. And Commerce always reserves its rights. It may, as if there were an extraordinary situation as in TKS, which again, this Court has seen lots of cases from the Department of Commerce, and TKS is really the only case in which Commerce has invoked its inherent authority to cleanse its proceedings from the taint of fraud. And it would, it could if there were some external, I mean, you know, Home Products talks about this per se rule that we're relying on, and we're not saying that there has to be a per se rule. I mean, I think as a response to Judge Dyke's question, Commerce has the authority to take whatever, it has the inherent authority to do whatever it feels appropriate if it feels its proceedings are tainted by fraud. It doesn't require a judgment. It doesn't require per se. But as a practical matter, it does, because there really isn't anything under the statute where Commerce is sitting down as a CPB, a U.S. Customs and Border Protection, you know, special agent, or an FBI special agent and deciding whether something, whether there's intention to defraud the agency. They don't have time, and they don't really have the authority under the statute to do that. So what happened in TKS was an external finding of fraud, which is really for all practical purposes, I think, what would be necessary for Commerce to do that. And in that case, the reason, the very material situation there was that the order had been revoked as a result of the fraud. Here, an AFA rate wasn't applied. Okay. Very well. Thank you very much, Your Honor. Thank you. We'll hear rebuttal from Mr. Eikenson if you have any. Well, Your Honors, first, just to repeat, we didn't present the evidence that we had to the Commerce Department during the second review, because we didn't have it at that time. It arose later. It was after acquired evidence. And as soon as we got it, we fashioned a letter to the Commerce Department, and we then submitted it. In the third? In the third administrative review. In the third review. What if there wasn't a third review, and what if you got this evidence 5, 10, 15 years after the second review, and you sent it to Commerce? Would they be obligated to open that up? Before I answer that, may I just complete the remarks and answer Judge Brice? We filed a letter in the third review on September 2, 2008, and within three weeks we submitted a motion to the Court of International Trade in the second review litigation, litigation that's now before you. So we moved very quickly. As soon as we had acquired this information that some fraud was going on, we asked the Court to please consider it. The Court rejected that motion, and subsequently we moved again at the end of the case to remand to the Department. Now, with respect to Your Honors' question, Judge Moore, I don't know if the question is, if we're sitting on evidence provided? Not if we're sitting on it, but what if you newly discover it, but you newly discover it 5 or 7 years later, and there isn't a third administrative review, would you be allowed to bring suit against Commerce saying that they should reopen that second review? No, I think what we would have to do is we would have the right to write to Commerce and say, please invoke your inherent authority to reconsider. Commerce will respond. They can say it's too late. They'll say it's too late. We can't do it. So then it's up to me to fashion an argument that they've abused their discretion. I may not have that argument available to me. So they can say it's too late here then, too. That, I don't see how they can do, because the case is in court. Well, but it took, it was more than a year after the judgment in the second administrative review. Rule 60B of the Federal Rules of Civil Procedure says one year after the judgment. So it's not silly to suggest that maybe it was too late, even though you moved promptly after you discovered it. I know in the TKS case cited by government counsel, there the evidence of fraud came years after the administrative matter was closed. So I don't think we should be handicapped by Rule 660B and to be told if you don't do it within one year, you're out of luck. I don't see any reason for that. We were in court. The second review has not been finalized. And we did, we thought we acted very properly by going immediately to the court and said, look what we found. I think my light is on. If there are no further questions. Thank you. Thank you. We thank both counsel and counsel is submitted. All rise.